# EXHIBIT A

Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com
HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

*Attorneys for Plaintiff*
*and the Proposed Class*

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT
7/13/2026 12:00
By: Martin Sandoval, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

**UNLIMITED CIVIL**

JARED WILKINS,
for himself,
as a private attorney general,
and on behalf of all others similarly situated,

Plaintiff,

v.

PALMETTO STATE ARMORY, LLC and
JJE CAPITAL HOLDINGS, LLC,

Defendants.

Case No. CIVSB2620551

**CLASS ACTION**

**COMPLAINT FOR:**

**(1) VIOLATION OF CAL. CIVIL CODE § 1750 *et seq.*;**

**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500 *et seq.*;**

**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 *et seq.***

JURY TRIAL DEMANDED

Plaintiff Jared Wilkins ("Plaintiff" or "Mr. Wilkins"), individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and the investigation of his counsel, against Defendants Palmetto State Armory, LLC and JJE Capital Holdings, LLC (collectively, "Palmetto" or "Defendants"):

## I. INTRODUCTION AND SUMMARY

1. Palmetto sells guns, ammo, and gun-related accessories through its website, www.palmettostatearmory.com, and its retail stores. Palmetto offers products both from its own proprietary brand as well as from other gun manufacturers. Palmetto's products are exclusively available on its website and in its retail stores.

2. For years, Palmetto has engaged in a massive and consistent false discount advertising scheme across its website. Over 80% of the products on Palmetto's website are perpetually advertised at a discount, typically ranging from 10% to 20% off, but sometimes as high as 45% off. These discounts are taken from Palmetto's inflated and self-created strikethrough reference prices for those products. Palmetto represents these reference prices to be the regular and normal prices of those products. However, unbeknownst to its customers, Palmetto's discounts are never-ending, and the products are never or almost never offered at the supposed regular price—and never in good faith.

3. Palmetto also falsely advertises that the purported discounts are for a limited time and indicates that the products will return to the full price after the sale ends, when in fact the advertised discounts are perpetual and never-ending.

4. Palmetto's false discount advertising is so pervasive across all of its discounted products and its advertising for these products that it is apparent that the heart of Palmetto's marketing plan is to deceive the public.

5. Palmetto's intent is to trick consumers into believing that its discounted products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Palmetto perpetrates this illegal scheme in order to induce consumers to purchase its products and to charge more for its products than it otherwise could have charged.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

6. Palmetto's false discount advertising harms consumers like Plaintiff by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

7. Customers do not enjoy the actual discounts Palmetto promises them, and the discounted products are not in fact worth the amount that Palmetto represents to them.

8. Palmetto's deceptive pricing scheme also artificially increases the demand for its discounted products and causes all customers, including Plaintiff and Class members, to pay price premiums to Palmetto.

9. Palmetto's false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*, in numerous ways, as detailed in this Complaint.

10. Plaintiff brings this lawsuit individually and on behalf of a Class of California consumers who purchased from the Palmetto website one or more products advertised with a discount. Plaintiff seeks restitution and/or disgorgement for himself and for each of the Class members. Additionally, Plaintiff, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining Palmetto from engaging in the unlawful false discount advertising scheme alleged herein.

## II. THE PARTIES

11. Plaintiff Jared Wilkins is a citizen and resident of the city of Yucca Valley, in San Bernardino County, California, and is an unsophisticated consumer. Mr. Wilkins made a purchase from the Palmetto website and is a victim of Palmetto's false discount advertising scheme.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

12. Defendant Palmetto State Armory, LLC ("PSA") is a South Carolina limited liability company formed in 2008 with its principal place of business in Columbia, South Carolina.

13. Defendant JJE Capital Holdings, LLC ("JJE") is a South Carolina limited liability company founded in 2018. JJE owns and operates multiple gun manufacturing and retail companies, including the PSA brand. JJE and PSA are headquartered at the same address in Columbia, South Carolina. Furthermore, JJE and PSA were created by and are now operated and controlled by the same executive.[1]

14. For the purposes of this Complaint, PSA and JJE will be collectively referred to as "Defendants" or "Palmetto."

15. Palmetto owns and operates the Palmetto website, palmettostatearmory.com. Palmetto also owns and operates ten Palmetto retail stores: eight in South Carolina, one in North Carolina, and one in Georgia.

## III. JURISDICTION AND VENUE

16. **Subject Matter Jurisdiction.** The Court has subject matter jurisdiction over this civil action in that Plaintiff brings claims exclusively under California law, including California Civil Code § 1750 *et seq.*, California Business & Professions Code § 17500, *et seq.*, and California Business & Professions Code § 17200, *et seq.*

17. **Personal Jurisdiction.** This Court has personal jurisdiction over Palmetto pursuant to California Code of Civil Procedure § 410.10 because: (1) Palmetto regularly conducts business in California including via its retail website, palmettostatearmory.com, and/or (2) Palmetto has committed tortious acts within California or has committed tortious acts outside California which had an impact within California (as alleged, without limitation, throughout this Complaint). Palmetto has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

---

[1] *See* PSA website at https://palmettostatearmory.com/blog/the-palmetto-state-armory-story.html (describing Jamin McCallum as "Palmetto State Armory founder and CEO"); *see also* JJE website at https://jjech.com/about-us (listing Jamin McCallum as "Owner/Chief Executive Officer").


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

18. **Venue.** Venue is proper under California Civil Code § 1780(d) because Palmetto is doing business in San Bernardino County through its retail website, palmettostatearmory.com. Venue is also proper because Plaintiff resides in San Bernardino County and the transaction at issue occurred when Plaintiff visited Palmetto's retail website and purchased falsely discounted products from the website while residing in San Bernardino County. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A**.

## IV. PALMETTO'S FALSE DISCOUNT ADVERTISING SCHEME

19. Palmetto sells guns, ammo, and gun-related accessories through its website, palmettostatearmory.com, and its retail stores. Palmetto offers products both from its own proprietary brand as well as from other gun manufacturers. Palmetto's products are exclusively available on its website and in its retail stores.

20. For years, Palmetto has engaged in a massive and consistent false discount advertising scheme across its website. Over 80% of the products on Palmetto's website are perpetually advertised at a discount, typically ranging from 10% to 20% off, but sometimes as high as 45% off. These discounts are taken from Palmetto's inflated and self-created strikethrough reference prices for its discounted products. Palmetto represents these reference prices to be the regular and normal prices of the products. However, unbeknownst to its customers, Palmetto's discounts are never-ending, and the products are never or almost never offered at the supposed regular price—and never in good faith.

21. Palmetto advertises discounts throughout its website.

22. On its product list pages, Palmetto advertises the discounts by displaying the strikethrough reference price next to a lower discounted selling price (e.g., "~~$819.99~~ $479.99"). See the screenshot below taken from the Palmetto website on February 13, 2026, using the Internet Archive's Wayback Machine.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

**Product List Page Displaying Discounted Palmetto Products – 02/13/2026**




23. On the individual product page, Palmetto similarly displays the strikethrough reference price next to the discounted selling price in the same manner (e.g., "~~$819.99~~ $479.99"). For example, see the screenshot below taken from the Palmetto website on February 14, 2026, using the Internet Archive's Wayback Machine.

**Product Page of Palmetto BLEM PSA PA-15 5.56 AR-15 Rifle 16" Nitride M4 CRBN 13.5" M-Lok – 02/14/2026**






HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

24. Palmetto intends that consumers interpret and understand the strikethrough reference price to stand for Palmetto's regular selling price for the product. Palmetto intends that consumers understand the reference price to reflect Palmetto's regular former price for the product. Palmetto intends that consumers understand the reference price to represent the value of the product. Palmetto intends that consumers understand and believe that by purchasing the product that day, consumers will enjoy an unusual and special bargain—specifically, that consumers will enjoy the advertised discount from the product's regular price.

25. Counsel's investigation has revealed that Palmetto advertises perpetual discounts on over 80% of its products, and these discounted products are never sold at their stated reference prices.

26. For example, as shown above, the BLEM PSA PA-15 5.56 AR-15 Rifle 16" Nitride M4 CRBN 13.5" M-Lok (the "Rifle") was on sale for $479.99 from a strikethrough reference price of $819.99 on February 14, 2026. However, based on counsel's investigation, Palmetto has <u>never</u> sold the Rifle at its strikethrough reference price of $819.99.

27. Using the Internet Archive's Wayback Machine, counsel's investigation of the Palmetto website found 45 screenshots of the Rifle from October 2023 to February 2026. In every single screenshot of the Rifle that counsel investigated, Palmetto offered the Rifle at a sale price between $469.99 and $499.99, discounted from a reference price of $819.99.

28. Additionally, based on the pricing data collected by Plaintiff's counsel, between July 29, 2025, and October 14, 2025, Palmetto always offered the Rifle at a discount between the prices of $469.99 and $489.99 from a purported reference price of $819.99.

29. Palmetto never—not even for a single day—offered the Rifle at its reference price or at a selling price of greater than $499.99.

30. Below are examples of typical screenshots that counsel found of the Rifle, which show constant discounts from October 2023 to January 2026.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

## Palmetto Perpetually Markets Products With False Discounts

## Example: Rifle

### 10/03/2023

Selling Price: $479.99
Reference Price: ~~$819.99~~




### 12/18/2023

Selling Price: $479.99
Reference Price: ~~$819.99~~




### 01/05/2024

Selling Price: $479.99
Reference Price: ~~$819.99~~




### 02/29/2024

Selling Price: $479.99
Reference Price: ~~$819.99~~




### 05/12/2024

Selling Price: $479.99
Reference Price: ~~$819.99~~




### 06/22/2024

Selling Price: $479.99
Reference Price: ~~$819.99~~






HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

**08/27/2024**

Selling Price: $479.99
Reference Price: ~~$819.99~~




**09/17/2024**

Selling Price: $499.99
Reference Price: ~~$819.99~~




**10/09/2024**

Selling Price: $499.99
Reference Price: ~~$819.99~~




**11/18/2024**

Selling Price: $479.99
Reference Price: ~~$819.99~~




**01/30/2025**

Selling Price: $469.99
Reference Price: ~~$819.99~~




**02/20/2025**

Selling Price: $489.99
Reference Price: ~~$819.99~~






HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

**03/22/2025**

Selling Price: $469.99
Reference Price: ~~$819.99~~




**05/19/2025**

Selling Price: $469.99
Reference Price: ~~$819.99~~




**06/30/2025**

Selling Price: $469.99
Reference Price: ~~$819.99~~




**07/30/2025**

Selling Price: $469.99
Reference Price: ~~$819.99~~




**08/11/2025**

Selling Price: $469.99
Reference Price: ~~$819.99~~




**09/26/2025**

Selling Price: $479.99
Reference Price: ~~$819.99~~





HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

| 10/27/2025 | 12/07/2025 | 01/12/2026 |
|---|---|---|
| Selling Price: $479.99 | Selling Price: $469.99 | Selling Price: $469.99 |










31. Based on counsel's investigation, and as the screenshots above demonstrate, Palmetto invents its purported regular prices (the strikethrough reference prices) out of thin air.

32. Palmetto's false discount advertising described above is typical and representative of the false discount advertising Palmetto perpetrates on its website for all of its discounted products.

33. Palmetto also advertises false limited-time sale events for its discounted products to induce consumers to purchase the products immediately before they supposedly return to the (fictitious) reference price. For example, Palmetto often marks its discounted products with phrases like "Daily Deal" or "Freedom Week."

34. Reasonable consumers would understand the words to mean that the discounted price will end in a day, week, or other such stated period of time. However, unbeknownst to consumers, Palmetto perpetually continues the discounts and replaces or removes the phrase describing the sale event.

35. For example, on September 16, 2025, Palmetto advertised the Rifle with a sale price of $479.99 from a reference price of $819.99. The next day, on September 17, 2025, Palmetto advertised a "Freedom Week" sale event on selected products, including the Rifle. However, despite the advertised "Freedom Week" sale event, the sale price for the Rifle was


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

exactly the same: $479.99 from a reference price of $819.99. This "Freedom Week" sale event continued for a week until September 23, 2025. On September 24, 2025, after the "Freedom Week" sale event was supposed to end, Palmetto advertised the Rifle with a new "Daily Deal" sale event, still with a sale price of $479.99 from a reference price of $819.99. The "Daily Deal" sale event disappeared the next day on September 25, 2025; however, the Rifle was still on sale for the same $479.99 amount from a reference price of $819.99. From September 26, 2025 through at least October 13, 2025, Palmetto intermittently advertised a "Daily Deal" sale event, but regardless of whether Palmetto advertised the Rifle as a "Daily Deal" or not, Palmetto perpetually advertised the Rifle at the identical discounted price of $479.99 from a reference price of $819.99. See the below table and screenshots[2] displaying the "sales" on the Rifle from September 16, 2025 to October 13, 2025.

[2] The screenshots shown below were captured with an automated system. Some screenshots were captured prior to the "Are you at least 18 years old?" popup on the Palmetto website being dismissed and are blurred as a result.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

| Date | Sale Event | Discount | Screenshot |
|---|---|---|---|
| 09/16/2025 | None | ~~$819.99~~ $479.99 |  |
| 09/17/2025 – 09/23/2025 (Screenshot taken 09/21/2025) | Freedom Week | ~~$819.99~~ $479.99 |  |
| 09/24/2025 | Daily Deal | ~~$819.99~~ $479.99 |  |



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

| | | | |
|---|---|---|---|
| 09/25/2025 | None | ~~$819.99~~<br>$479.99 | <br> |
| 09/26/2025 | Daily Deal | ~~$819.99~~<br>$479.99 |  |
| 09/27/2025 | None | ~~$819.99~~<br>$479.99 |  |
| 09/28/2025 –<br>09/29/2025<br>(Screenshot taken 09/29/2025) | Daily Deal | ~~$819.99~~<br>$479.99 |  |



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

| | | | |
|---|---|---|---|
| 09/30/2025 – 10/01/2025 (Screenshot taken 10/01/2025) | None | ~~$819.99~~ $479.99 |  |
| 10/02/2025 | Daily Deal | ~~$819.99~~ $479.99 |  |
| 10/03/2025 | None | ~~$819.99~~ $479.99 |  |
| 10/04/2025 – 10/05/2025 (Screenshot taken 10/05/2025) | Daily Deal | ~~$819.99~~ $479.99 |  |


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

| | | | |
|---|---|---|---|
| 10/06/2025 | None | ~~$819.99~~ $479.99 |  |
| 10/07/2025 – 10/13/2025 (Screenshot taken 10/07/2025) | Daily Deal | ~~$819.99~~ $479.99 |   |

36. As shown above, despite what reasonable consumers might believe based on Palmetto's representations, Palmetto's stated limited-time sale events are meaningless and do not reflect true discounts. Palmetto's false limited-time sale advertising for the Rifle is typical and representative of that which it perpetrates for its discounted products throughout its website. In reality, on every day, Palmetto was actually just offering those products at their normal and usual—and falsely discounted—prices.

## V. <u>PLAINTIFF'S ALLEGATIONS ARE BASED ON HIS COUNSEL'S COMPREHENSIVE INVESTIGATION INTO PALMETTO'S PRACTICES</u>

37. Plaintiff's allegations concerning Palmetto's false discount advertising are based on a comprehensive investigation by Plaintiff's counsel of Palmetto's pricing practices. Plaintiff's counsel monitored and scraped the Palmetto website on an automated daily basis with a proprietary software program between July 28, 2025 and October 14, 2025, and from February 24, 2026 to the date of filing of this Complaint.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

38. Plaintiff's counsel compiled and extracted daily pricing and marketing data from the Palmetto website for tens of thousands of products Palmetto offered during this period from July 28, 2025 through the present day. In total, Plaintiff's counsel assembled and analyzed an exhaustive historical database of prices and time-stamped screenshots of over 4.7 million daily offerings of approximately 63,979 products during these periods.

39. Additionally, counsel examined over one hundred archived screenshots of the Palmetto website on the Internet Archive's Wayback Machine (available at www.archive.org) starting from July 2020. In every single screenshot that counsel looked at, over 80% of the products shown were displayed with a discount.

40. Counsel's investigation and data show that Palmetto advertises perpetual discounts for over 80% of its products.

41. The discounts are false, and Palmetto's reference prices are false and inflated. Palmetto has never or almost never offered the discounted products at the reference price without a discount—and never in good faith.

42. Based on counsel's investigation, counsel determined that Palmetto's false discount advertising scheme has been ongoing since at least July 2020 and likely earlier.

43. Palmetto's false discount advertising is so pervasive across all of its discounted products and in all of its advertising for those products that it is apparent that the heart of Palmetto's marketing plan is to deceive the public.

44. Counsel's investigation into Palmetto's false discount advertising scheme is as thorough as possible under the circumstances. Thus, Plaintiff's allegations which are based on information and belief are permissible. "Without an opportunity to conduct any discovery, [Plaintiff] cannot reasonably be expected to have detailed personal knowledge of [Palmetto's] internal pricing policies or procedures." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017). "Because [Plaintiff] need not specifically plead facts to which [he] cannot 'reasonably be expected to have access,' [his] allegations regarding the fictitious nature of the [reference] prices may properly be based on personal information and belief at [the pleading] stage of the litigation." *Id.* Here, Plaintiff's allegations are based not only on



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

information and belief, but also on a comprehensive investigation of Palmetto historical website advertising which was as thorough as possible under the circumstances.

## VI. PALMETTO'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

45. Palmetto perpetrates this false discount advertising scheme because it works—lying about discounts increases demand and increases Palmetto's revenues and profits.

46. Indeed, decades of academic research have established that the use of reference prices and discount advertising like that utilized by Palmetto materially impacts consumers' behavior and induces them to purchase the "discounted" products. A reference price (e.g., the strikethrough price advertised by Palmetto from which the advertised discounts are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[3]

47. When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are

---

[3] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

harmed when retailers, such as Palmetto, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

48. As a direct and proximate result of Palmetto's false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

49. First, Plaintiff and Class members were harmed because they would not have purchased the products at the prices they paid had they known that the discounts were fake and that the products had not in fact been regularly offered at the higher reference price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

50. Consumers who are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

51. Additionally, Palmetto's advertised limited-time sale events created a false sense of urgency, which made consumers more likely to make a purchase. Studies and articles have documented how limited-time sales induce customers to purchase products. For example, a study regarding the effect of time-limited advertisement concluded that "[t]he willingness to buy was significantly higher" and "the attitude towards the deal was more favourable." Aggarwal, P., *Use it or lose it: Purchase acceleration effects of time-limited promotions*, Journal of Consumer Behaviour (September 17, 2002) at 399–401.

52. Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargains. Plaintiff and Class members did not enjoy the actual discounts


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

Palmetto represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Palmetto represented to them; the products did not regularly sell for, and did not have a market value of, the fictitious reference price advertised by Palmetto. In fact, for every single product that Palmetto advertises with a discount, Palmetto has never or almost never offered the product at the reference price without a discount—and never in good faith.

53. Palmetto's false discount advertising scheme is for all intents and purposes identical to that which the FTC Pricing Guides describe as false and misleading. *See* 16 C.F.R. § 233.1 "Former Price Comparisons." On information and belief, on those rare occasions that Palmetto offers its discounted products at the reference price, it does so in bad faith, solely for the purpose of "establishing" its reference price to attempt to exculpate itself from legal liability for its illegal false discount advertising scheme. It is Palmetto's intent to sell few if any of its perpetually discounted products at reference price, and in fact Palmetto sells few if any of its perpetually discounted products at reference price.

54. Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Palmetto's deceptive pricing scheme. Palmetto's false discount advertising scheme artificially increased consumer demand for Palmetto's discounted products, which shifted the demand curve and allowed Palmetto to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations.

55. Palmetto's false discount advertising scheme enabled Palmetto to charge everyone more for all its discounted products by artificially stimulating demand based on false pretenses. *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Palmetto would have had to charge less for its products in order to enjoy the same level of demand.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

56. In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices and false discounts constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

57. Federal and state courts have articulated the abuses that flow from false discount advertising practices like those perpetrated by Palmetto. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

58. The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

59. California law prohibits false discount advertising practices such as those perpetrated by Palmetto.

60. California's Consumers Legal Remedies Act (CLRA) prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

"[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

61. California's False Advertising Law (FAL) prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely indicating that a product is on sale, when it actually is not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former price ... unless the alleged former price was the prevailing market price ... within three months next immediately preceding [the advertisement] or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

62. Finally, California's Unfair Competition Law broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

63. In addition, the Federal Trade Commission's ("FTC") regulations prohibit false or misleading "former price comparisons." 16 C.F.R. § 233.1. For example, an advertised former price is false when it is "an artificial, inflated price [that] was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R. § 233.1(a).

64. A UCL claim may also be predicated on a violation of this FTC regulation under the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

65. As alleged in detail above, Palmetto's advertised reference prices and discounts violate California law because, based on the investigation of Plaintiff's counsel, Palmetto's advertised reference prices for its discounted products are inflated and fictitious, and Palmetto's advertised discounts for these products are false. Palmetto advertises perpetual discounts for these products and never or almost never offers the products at their advertised reference price.

66. Additionally, because Palmetto advertises over 80% of its products with perpetual discounts of typically from 10% to 20% off and sometimes even up to 45% off, its advertised former prices for the discounted products were not the prevailing market price in the


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

three months immediately preceding the advertisement. *See* Cal. Bus. & Prof. Code § 17500. This is true for Palmetto's exclusive products because Palmetto's own actual selling prices determine the prevailing market price. *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019). This is also true for Palmetto's non-exclusive products "because in competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price." *Id.* at 416–17. Since Palmetto's advertised former prices are consistently higher than their actual prices, the only reasonable inference is that those advertised prices were not the prevailing market prices during the requisite three-month period. *See id.* at 417; *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *5 (N.D. Cal. Mar. 28, 2024) ("[Plaintiff] need not identify the prices charged by other retailers to plausibly allege that the strikethrough prices were not the prevailing market prices. Instead, the Court can reasonably infer on a motion to dismiss that [Defendant] 'would not continually sell products for prices' for 'less than the market rates at which those products are offered elsewhere.'"); *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *5 (N.D. Cal. Jan. 5, 2024) (same); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) (same).

67. The false reference price and false discount representations by Palmetto were material to the decisions of consumers to purchase each discounted product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

68. Palmetto's false discount advertising is so pervasive across all of its discounted products and all of its advertising for these products that it is apparent that the heart of Palmetto's marketing plan is to deceive the public.

69. Palmetto's intent is to deceive consumers into believing that its discounted products are worth, and have a market value equal to, the inflated reference price (the strikethrough reference price), and that the lower advertised actual price represents a special bargain.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

70. The false or misleading nature of Palmetto's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all circumstances would not have known or discovered their false or misleading nature.

71. As a direct and proximate result of Palmetto's acts and omissions, all consumers who have purchased a product from Palmetto that was falsely advertised with a reference price or purported discount have been harmed and have lost money or property.

72. Palmetto continues to advertise false reference prices, false discounts, and false limited-time savings to this day. There is no reason to believe that Palmetto will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Palmetto were to cease its unlawful practices, Palmetto can and is likely to recommence these unlawful practices.

73. In acting toward consumers and the general public in the manner alleged herein, Palmetto acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, Class members, and the public.

## VII. PLAINTIFF JARED WILKINS'S PURCHASE

74. Plaintiff Jared Wilkins is, and at all relevant times has been, a citizen and resident of the city of Yucca Valley, in San Bernardino County, California.

75. Mr. Wilkins is a victim of Palmetto's false discount advertising scheme.

76. As detailed above, Palmetto's false discounting practices have been ongoing since at least July 2020. During this time, Mr. Wilkins purchased products from Palmetto's website that were advertised with a false reference price and a false discount.

77. For example, on March 2, 2025, Mr. Wilkins visited the Palmetto website to shop for gun-related accessories. While browsing the Palmetto website, Mr. Wilkins viewed pricing and discount representations similar to those described and presented in detail above.

78. The products Mr. Wilkins viewed on the Palmetto website included the Holosun 407 Reflex Sight 3MOA Shake Awake - HS407A3 X2 (the "Reflex Sight").

79. Mr. Wilkins viewed representations that the Reflex Sight was on sale for $169.99 from a strikethrough reference price of $299.99.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

80. Based on Palmetto's representations, Mr. Wilkins believed he needed to act fast and purchase the Reflex Sight now to take advantage of the special sale before the Reflex Sight returned to its normal full price.

81. Relying on these representations of receiving a special and significant discount for the Reflex Sight, Mr. Wilkins completed the checkout process and purchased the Reflex Sight.

82. Relying on Palmetto's representations, Mr. Wilkins reasonably believed that the Reflex Sight was normally offered and sold by Palmetto at the higher advertised strikethrough reference price of $299.99. Mr. Wilkins reasonably believed that the Reflex Sight was worth, and had value of, the higher stated reference price of $299.99. Mr. Wilkins reasonably believed that the advertised "sale" price of $169.99 represented a special bargain, where Palmetto was temporarily offering the Reflex Sight at a significant discount from the regular and normal selling price.

83. However, Palmetto's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. Wilkins, based on counsel's investigation, Palmetto had never previously offered the Reflex Sight at its advertised regular price.

84. As part of his counsel's investigation, counsel examined every screenshot of the Reflex Sight that counsel could find on the Internet Archive's Wayback Machine from July 2022 to April 2025, including the day of Mr. Wilkins's purchase; and in every screenshot, Palmetto advertised the Reflex Sight with a discount. Specifically, Palmetto advertised the Reflex Sight at a sale price of between $169.99 and $219.99, discounted from a strikethrough reference price of $299.99.

85. Additionally, Plaintiff's counsel collected pricing data for the Reflex Sight with counsel's proprietary web scraping software from July 29, 2025 to October 14, 2025, and from March 1, 2026 to the present, which showed that Palmetto never offered the Reflex Sight at its advertised regular price during this time. Instead, Palmetto advertised the Reflex Sight with a sale price of between $149.99 and $199.99, discounted from a strikethrough reference price of $299.99.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

86. Given these facts and counsel's comprehensive investigation which documented and confirmed Palmetto's false discount advertising scheme over multiple years (as described in this Complaint), it is reasonable to infer for pleading purposes that Palmetto never offered the Reflex Sight at its reference price at any time prior to or after Mr. Wilkins's purchase on March 2, 2025.

87. The $299.99 reference price advertised by Palmetto to Mr. Wilkins was not Palmetto's regular offering price for the Reflex Sight and did not reflect the market value of the Reflex Sight. Mr. Wilkins did not receive the advertised and promised discount from the true regular price of the Reflex Sight.

88. Palmetto's advertised reference price and discount for the Reflex Sight was a material misrepresentation and inducement to Mr. Wilkins's purchase.

89. Mr. Wilkins reasonably relied on Palmetto's material misrepresentations. If Mr. Wilkins had known the truth, he would not have purchased the Reflex Sight at the price he paid.

90. As a direct and proximate result of Palmetto's acts and omissions, Mr. Wilkins was harmed, suffered an injury-in-fact, and lost money or property.

91. Mr. Wilkins paid a price premium on the Reflex Sight as a result of Palmetto's deceptive pricing scheme. Palmetto's false discount advertising enabled Palmetto to offer the Reflex Sight (and also all of Palmetto's other falsely discounted products) at a higher price than Palmetto otherwise would have offered and charged, causing Mr. Wilkins (and all other class members) to pay more than they otherwise would have paid for the products they purchased.

92. When Mr. Wilkins shopped at Palmetto, he had no suspicion that Palmetto's advertised reference prices and discounts were false. Palmetto gave Mr. Wilkins no reason to be suspicious. Mr. Wilkins first learned of Palmetto's false discount advertising scheme on February 22, 2026, when his attorneys told him about Palmetto's unlawful conduct and informed him that he was a victim of the scheme. Prior to this, Mr. Wilkins did not know or suspect that Palmetto was engaging in a false discount advertising scheme or that he had been a victim of the scheme.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

93. Mr. Wilkins has a legal right to rely now, and in the future, on the truthfulness and accuracy of Palmetto's representations regarding the advertised reference prices and discounts for its products.

94. Mr. Wilkins faces an imminent threat of future harm. Mr. Wilkins would purchase from Palmetto's website again in the future if he could have confidence regarding the truth about Palmetto's price and discount representations. But without an injunction, Mr. Wilkins has no realistic way of knowing which, if any, of Palmetto's reference prices, discounts, and sales are true.

95. Mr. Wilkins will be harmed if, in the future, he is left to guess as to whether Palmetto is providing a legitimate sale or not, and whether its products are actually worth the amount that Palmetto is representing.

96. If Mr. Wilkins were to purchase again from Palmetto without Palmetto having changed its unlawful and deceptive conduct alleged herein, Mr. Wilkins would be harmed on an ongoing basis and/or would be harmed once or more in the future.

97. The deceptive practices and policies alleged herein, and experienced directly by Mr. Wilkins, are not limited to any single product or group of products. Rather, Palmetto's deceptive discount advertising practices were, and continue to be, systematic and pervasive across Palmetto's discounted products.

## VIII. CLASS ALLEGATIONS

98. Plaintiff brings this class action lawsuit under California law on behalf of himself and the members of the following class (the "Class"):

> **All persons who, while in California, purchased from the Palmetto website one or more products advertised at a discount within the applicable limitations period.**

99. Specifically excluded from the Class are Palmetto and any entities in which Palmetto has a controlling interest, Palmetto's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

100. **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Palmetto first engaged in its unlawful false discounting practices. Based on counsel's investigation, Palmetto's false discount advertising practices have been ongoing since at least July 2020 and likely began much earlier. However, without discovery, Plaintiff cannot determine the earliest date Palmetto first began advertising false discounts for its products.

101. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiff and the members of the Class did not know, and could not have reasonably known, about Palmetto's unlawful conduct.

102. When Plaintiff shopped on the Palmetto website, he had no suspicion that Palmetto's advertised reference prices and discounts were false. Palmetto gave Plaintiff no reason to be suspicious. Plaintiff first learned of Palmetto's false discount advertising scheme on February 22, 2026, when his attorneys told him about Palmetto's unlawful conduct and informed him that he was a victim of the scheme. Prior to this, Plaintiff did not know or suspect—and had no reason to suspect—that Palmetto was engaging in a false discount advertising scheme or that he had been a victim of the scheme. *See Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (holding that the Plaintiff's claims did not begin to accrue under the discovery rule until the date his lawyers informed him that he was likely a victim of the defendant's false discount advertising scheme).

103. Likewise, Class members would not have known or suspected that Palmetto was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would have believed that Palmetto's pricing and discount representations were true.

104. Reasonable consumers would have believed that Palmetto's strikethrough reference prices: (1) represented Palmetto's regular and normal prices that consumers had to pay for the products; (2) represented Palmetto's recent former prices for the products (that is,


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

the prices at which the products were regularly offered for sale); and (3) represented Palmetto's prices that consumers would have to pay for the products when the sale ended.

105. Reasonable consumers would have believed that Palmetto's advertised discounts represented a reduction from the regular and recent former prices of the products in the amounts advertised.

106. Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Palmetto's false discount advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover.

107. "The only way for a person to know that [a retailer's] advertised discounts were false is for the person to know [the retailer's] true historical selling prices for the products he or she purchased." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *3 (W.D. Wash. Mar. 12, 2025). Consumers who shopped at Palmetto would have had no way to know, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have had no way to know, with the exercise of reasonable diligence, that Palmetto's regular prices (i.e., the advertised strikethrough reference prices) were fictitious and inflated and that the advertised savings were false.

108. Plaintiff's counsel only found evidence for Palmetto's deceptive pricing scheme by conducting an extensive investigation that no reasonable person would conduct.

109. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Palmetto's records and can be easily ascertained from those records.

110. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating classwide answers that will drive the resolution of this case. These common questions predominate over any questions affecting



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether the alleged conduct of Palmetto violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

b. Whether the alleged conduct of Palmetto violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

c. Whether the alleged conduct of Palmetto violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

d. Whether the alleged conduct of Palmetto violates 16 C.F.R. § 233.1 *et seq.*;

e. Whether Plaintiff and the Class have suffered injury and have lost money or property as a result of Palmetto's unlawful conduct; and

f. Whether Palmetto should be enjoined from engaging in the unlawful conduct alleged herein.

111. **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Palmetto's standard practices and schemes, bring the same claims, and face the same potential defenses.

112. **Adequacy.** Plaintiff and his counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

113. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Palmetto's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

114. By its conduct and omissions alleged herein, Palmetto has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

115. Palmetto is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against Palmetto in this Complaint arises from and is limited to statements or conduct by Palmetto that consist of representations of fact about Palmetto's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Palmetto's goods; or the statements are or were made in the course of delivering Palmetto's goods. Each cause of action brought by Plaintiff against Palmetto in this Complaint arises from and is limited to statements or conduct by Palmetto for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

## COUNT I

**Violation of the Consumers Legal Remedies Act ("CLRA")**

**California Civil Code § 1750 *et seq.***

116. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

117. Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

118. Palmetto's products are "goods" as defined by California Civil Code § 1761(a).

119. Palmetto is a "person," as defined by Cal. Civ. Code § 1761(c).



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

120. Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

121. Plaintiff and Class members purchased Palmetto's products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

122. Plaintiff's and Class members' purchases from Palmetto each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

123. Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transaction at issue occurred in San Bernardino County. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

124. The unlawful methods, acts or practices alleged herein to have been undertaken by Palmetto were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Palmetto did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

125. Palmetto's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a. Palmetto represented that its products had characteristics that they did not have (Cal. Civ. Code § 1770(a)(5));

b. Palmetto advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

c. Palmetto made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d. Palmetto misrepresented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

126. With respect to any omissions, Palmetto at all relevant times had a duty to disclose the information in question because, inter alia: (a) Palmetto had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Palmetto concealed material information from Plaintiff and Class members; and (c) Palmetto made partial representations which were false and misleading absent the omitted information.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

127. Palmetto intentionally deceived Plaintiff and the Class, and continues to deceive the public, by advertising false discounts and false reference prices.

128. Palmetto's misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

129. Palmetto's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

130. As a direct, substantial, and/or proximate result of Palmetto's unlawful conduct, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

131. Plaintiff and Class members reasonably relied on Palmetto's material misrepresentations, and would not have purchased Palmetto's products at the prices that they paid had they known the truth.

132. Additionally, Palmetto's advertised limited-time discounts for its products were false and its advertised sales events were deceptive and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

133. Plaintiff and Class members did not receive the benefits of their bargains. Plaintiff and Class members did not enjoy the actual discounts that Palmetto represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Palmetto represented to them; the products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Palmetto.

134. By its conduct and omissions alleged herein, Palmetto caused the demand for its discounted products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Palmetto. Put differently, as a result of its misrepresentations, Palmetto has been able to charge a price premium for its discounted products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Palmetto would have had to charge less for the products in order to enjoy the same level of demand.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

135. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CLRA to protect the general public from Palmetto's false advertisements, misrepresentations, and omissions.

136. Palmetto's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Palmetto absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Palmetto from committing the unlawful practices alleged herein.

137. The balance of the equities favors the entry of permanent public injunctive relief against Palmetto. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Palmetto's ongoing false advertising absent the entry of permanent public injunctive relief against Palmetto.

138. Plaintiff lacks an adequate remedy at law to prevent Palmetto from engaging in the unlawful practices alleged herein. Plaintiff would purchase products from Palmetto again if he could have confidence regarding the truth of Palmetto's prices and the value of its products. Plaintiff will be harmed if, in the future, he is left to guess as to whether Palmetto is providing a legitimate sale or not, and whether Palmetto's products are actually worth the amount that Palmetto is representing.

139. Monetary damages are not an adequate remedy at law for *future* harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Palmetto from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what products Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Palmetto.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

140. In accordance with California Civil Code § 1782(a), Plaintiff, through counsel, will be serving Palmetto with notice of its CLRA violations. If Palmetto fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's notice letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

**COUNT II**

**Violation of California's False Advertising Law ("FAL")**

**California Business & Professions Code § 17500 *et seq.***

141. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

142. Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

143. Palmetto has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

144. Palmetto has advertised discounts and reference prices that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See*, *e.g.*, *Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same).

145. Additionally, Palmetto has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do Palmetto's former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

146. With respect to omissions, Palmetto at all relevant times had a duty to disclose the information in question because, inter alia: (a) Palmetto had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Palmetto concealed material information from Plaintiff and Class members; and (c) Palmetto made partial representations which were false or misleading absent the omitted information.

147. Palmetto committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Palmetto, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

148. Palmetto's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

149. Palmetto's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

150. As a direct and proximate result of Palmetto's violations of the FAL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

151. Plaintiff and Class members reasonably relied on Palmetto's material misrepresentations, and would not have purchased Palmetto's products at the prices that they paid had they known the truth.

152. Additionally, Palmetto's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

153. Plaintiff and Class members did not receive the benefits of their bargains. Plaintiff and Class members did not enjoy the actual discounts that Palmetto represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Palmetto represented to them; the products did not regularly sell for, and were not actually worth, the fictitious and invented reference prices advertised by Palmetto.

154. By its conduct and omissions alleged herein, Palmetto caused the demand for its discounted products to be artificially increased and caused all customers, including Plaintiff



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

and Class members, to pay price premiums to Palmetto. Put differently, as a result of its misrepresentations, Palmetto has been able to charge a price premium for its discounted products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Palmetto would have had to charge less for the products in order to enjoy the same level of demand.

155. By its conduct and omissions alleged herein, Palmetto received more money from Plaintiff and Class members than it should have received. Palmetto should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

156. Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

157. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from Palmetto's false advertisements, misrepresentations, and omissions.

158. Palmetto's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Palmetto absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Palmetto from committing the unlawful practices alleged herein.

159. The balance of the equities favors the entry of permanent public injunctive relief against Palmetto. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Palmetto's ongoing false advertising absent the entry of permanent public injunctive relief against Palmetto.

160. Plaintiff lacks an adequate remedy at law to prevent Palmetto from engaging in the unlawful practices alleged herein, as stated in Count I above.

161. Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

**<u>COUNT III</u>**

**Violation of California's Unfair Competition Law ("UCL")**

**California Business & Professions Code § 17200 *et seq.***

162. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

163. Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

164. California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

165. **<u>"Unlawful" Prong.</u>** Palmetto has violated the UCL by engaging in the following unlawful business acts and practices:

a. Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

b. Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL);

c. Engaging in deceit in violation of Cal. Civ. Code §§ 1709–1710; and

d. Employing deceptive discount price advertisements as identified by 16 C.F.R. § 233.1 *et seq.*

166. **<u>"Unfair" and "Fraudulent" Prongs.</u>** Palmetto has violated the UCL by engaging in the following unfair and/or fraudulent business acts and practices:

a. Advertising false reference prices;

b. Advertising false discounts; and

c. Advertising false "limited-time" sales and discounts.

167. With respect to omissions, Palmetto at all relevant times had a duty to disclose the information in question because, inter alia: (a) Palmetto had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Palmetto



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

concealed material information from Plaintiff and Class members; and (c) Palmetto made partial representations which were false and misleading absent the omitted information.

168. Palmetto's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

169. Palmetto's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

170. As a direct and proximate result of Palmetto's violations of the UCL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

171. Plaintiff and Class members reasonably relied on Palmetto's material misrepresentations, and would not have purchased Palmetto's products at the prices that they paid had they known the truth.

172. Additionally, Palmetto's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

173. Plaintiff and Class members did not receive the benefits of their bargains. Plaintiff and Class members did not enjoy the actual discounts that Palmetto represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Palmetto represented to them; the products did not regularly sell for, and were not actually worth, the fictitious reference price advertised by Palmetto.

174. By its conduct and omissions alleged herein, Palmetto caused the demand for its discounted products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Palmetto. Put differently, as a result of its misrepresentations, Palmetto has been able to charge a price premium for its discounted products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Palmetto would have had to charge less for the products in order to enjoy the same level of demand.


HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

175. By its conduct and omissions alleged herein, Palmetto received more money from Plaintiff and Class members than it should have received. Palmetto should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

176. Palmetto's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Palmetto's conduct is oppressive and substantially injurious to consumers. There is no utility to Palmetto's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Palmetto's conduct alleged herein.

177. Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

178. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the UCL to protect the general public from Palmetto's false advertisements, misrepresentations, and omissions.

179. Palmetto's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Palmetto absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Palmetto from committing the unlawful practices alleged herein.

180. The balance of the equities favors the entry of permanent public injunctive relief against Palmetto. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Palmetto's ongoing false advertising absent the entry of permanent public injunctive relief against Palmetto.

181. Plaintiff lacks an adequate remedy at law to prevent Palmetto from engaging in the unlawful practices alleged herein, as stated in Count I above.



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

182. Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.

## PRAYER FOR RELIEF

Plaintiff Jared Wilkins, on behalf of himself and the proposed Class, requests that the Court order relief and enter judgment against Defendants Palmetto State Armory, LLC and JJE Capital Holdings, LLC (collectively, "Palmetto") as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and his counsel to represent the Class;

2. Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period back to the date Palmetto first engaged in the unlawful conduct alleged herein;

3. Declare that Palmetto's conduct alleged herein violates the CLRA, FAL, and UCL;

4. Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Palmetto obtained, directly or indirectly, from Plaintiff and Class members as a result of the unlawful conduct alleged herein;

5. Permanently enjoin Palmetto from engaging in the unlawful conduct alleged herein;

6. Order that Palmetto maintain the following records for at least two years for each daily product offering on its retail website from the date of each advertisement and/or offer for sale of the product, for auditing purposes to ensure compliance with the ordered public injunctive relief: (1) the advertised reference price for each product; (2) the basis for the advertised reference price; (3) the offer price and/or net selling price of each product; and (4) any discount or free offer that was advertised and/or applicable to each product;

7. Retain jurisdiction to monitor Palmetto's compliance with the permanent public injunctive relief requested hereinabove;



HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Tel: 425.233.8650 | Fax: 425.412.7171

8. Order Palmetto to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

9. Grant such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Date: July 12, 2026.

Presented by:

HATTIS LUKACS & CORRINGTON

By: ______________________

Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com
HATTIS LUKACS & CORRINGTON
123 112th Ave NE Ste 1
Bellevue, WA 98004
Telephone: (425) 233-8650

*Attorneys for Plaintiff and the Proposed Class*

# EXHIBIT A

Zoho Sign Document ID: 2A6F09F7-HRTDEZLRWQJDD6RDEWKDEJAIJXI3RR6H-8HG0REETHK

Daniel M. Hattis (SBN 232141)
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650
Fax: 425.412.7171
Email: dan@hattislaw.com

*Attorneys for Plaintiff*
*and the Proposed Class*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

**UNLIMITED CIVIL**

| | |
|---|---|
| JARED WILKINS,<br>for himself,<br>as a private attorney general,<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PALMETTO STATE ARMORY, LLC and<br>JJE CAPITAL HOLDINGS, LLC,<br><br>Defendants. | Case No.<br><br>**DECLARATION OF JARED WILKINS PURSUANT TO THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIVIL CODE § 1780(d))**<br><br>**[FILED CONCURRENTLY WITH COMPLAINT]** |

Zoho Sign Document ID: 2A6F09F7-HRTDEZLRWQJDD6RDEWKDEJAIJXI3RR6H-8HG0REETHK

I, Jared Wilkins, hereby declare and state as follows:

1. I am over the age of 18 years, and am a plaintiff in the above-referenced civil action.

2. The facts contained herein are based on my personal knowledge except as to facts stated upon information and belief and, as to those, I believe it to be true.

3. This civil action pleads a cause of action for violation of the California Consumers Legal Remedies Act ("CLRA") against Defendants Palmetto State Armory, LLC and JJE Capital Holdings, LLC (collectively, "Palmetto" or "Defendants"). This civil action has been commenced in a county described in Section 1780(d) of the California Civil Code as a proper place for the trial of the action.

4. This action is being commenced in San Bernardino County because San Bernardino County is the county in which I reside; San Bernardino County is the county in which the transaction or a substantial portion thereof occurred; and San Bernardino County is a county in which Palmetto is doing business.

5. The transaction or a substantial portion thereof occurred in San Bernardino County because I was in my home, which is in San Bernardino County, when I visited the Palmetto website where I viewed the alleged false advertising and made the purchase that is the subject of this litigation.

6. Palmetto is doing business in San Bernardino County, California, by, without limitation, advertising and selling its goods and services on the Palmetto website to California consumers in San Bernardino County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Yucca Valley, California.

Date: May 12 2026

Jared Wilkins

JARED WILKINS



HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com